FILED IN DISTRICT COURT
OKLAHOMA COUNTY

FEB 11 2014

TIM RHODES
COURT CLERK
43_____

## IN AND FOR THE DISTRICT COURT OF OKLAHOMA COUNTY
## STATE OF OKLAHOMA

WILLIAM C. PHELPS,  )
      )
   Plaintiff,  )
      )
v.  )  Case No. **CJ-2014-798**
      )
STATE FARM MUTUAL AUTOMOBILE  )  The Honorable
INSURANCE COMPANY, a foreign  )
corporation,  )
      )
   Defendant.  )

### PETITION

The Plaintiff, William C. Phelps ("Phelps" or "Plaintiff"), for his Petition against the Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), alleges and states:

#### JURISDICTION AND VENUE

1. Plaintiff is currently 77 years old. He resides in Oklahoma City, Oklahoma County, Oklahoma, and at all relevant times has been a citizen of Oklahoma.

2. At all times material hereto, and for a period of more than 35 years preceding the filing of the present lawsuit, Plaintiff was insured under various policies of automobile insurance issued by State Farm. The policy at issue in the present lawsuit included UM/UIM coverage with limits of $100,000 per person.

3. State Farm is incorporated in the State of Illinois, and has its principal place of business in a state other than Oklahoma. Not only did State Farm issue the subject policy of insurance to Plaintiff in Oklahoma County, Oklahoma, State Farm also handled and denied Plaintiff's claim at issue herein in Oklahoma County, Oklahoma.

EXHIBIT 1

## FACTUAL BACKGROUND

4. On December 7, 2001, Plaintiff was involved in an accident with, and caused by, an uninsured or underinsured motorist. Plaintiff suffered serious injuries as a result.

5. Approximately a year and a half later, on or about June 2, 2008, Plaintiff and State Farm reached an agreement with respect to Plaintiff's UM/UIM claim whereby State Farm unconditionally agreed to pay and Plaintiff agreed to accept the sum of $60,000.

6. State Farm did not require Plaintiff to sign a release in connection with the $60,000 payment, described above.

7. In the years that followed, Plaintiff's health continued to deteriorate as a result of the December 7, 2001, accident. A blood clot caused by the December 7, 2001, accident has continued to limit the use of Plaintiff's legs, and Plaintiff now requires the use of a medical scooter. In November 2011, Plaintiff contacted State Farm again to submit further claims under his UM/UIM coverage for a medical scooter and other damages stemming from the December 2001 accident.

8. On August 28, 2012, State Farm, through its employee/representative, Kelly Wienstroer, wrote to Plaintiff and misrepresented that "the appropriate statute of limitation of your Underinsured claim expired on June 2, 2008; five years after the date we reached a disagreement on the value of your claim." As stated above, the parties actually reached an *agreement* on June 2, 2008. An action on a claim for recovery of UM/UIM benefits accrues and the statute of limitations begins to run when a breach of the insurance contract occurs. *Wille v. GEICO Casualty Company*, 2000 OK 10, 2 P.3d 888. Plaintiff has never suggested that State Farm *breached* its contract in June 2003. Even if the parties were unable to resolve their purported "disagreement" in 2003, regarding the value of Plaintiff's UM/UIM claim, such "disagreement" does not constitute a breach of contract.

2

9. In State Farm's August 28, 2012, letter to Plaintiff, it nonetheless agreed to pay for the requested scooter in the amount of $5,800, but would not agree to pay for any additional injuries or damages suffered by Plaintiff up to his $100,000 UM/UIM limits. In addition, to ensure Plaintiff would not seek recovery of additional UM/UIM benefits over and above the payment of the scooter and up to his $100,000 UM/UIM limits, State Farm required Plaintiff to "sign a release for the sum of our payments, which will include the additional $5,800 we are offering." State Farm concluded that if Plaintiff is "unwilling to sign a release, [State Farm] cannot make any further payment."

10. State Farm provided Plaintiff with a Release to be signed. Plaintiff refused.

11. In the same August 28, 2012, letter from State Farm to Plaintiff, State Farm specifically acknowledged it "breached" its insurance contract with Plaintiff on August 15, 2012, when it required Plaintiff to sign a release. However, State Farm did properly inform Plaintiff that he had five years to sue State Farm for its admitted contract breach. Accordingly, Plaintiff now exercises his right to sue State Farm for breach of contract (which State Farm already concedes) and in addition, to assert claims against State Farm for tortious breach of contract, or bad faith.

### FIRST CAUSE OF ACTION

The Plaintiff, William C. Phelps, for his First Cause of Action, adopts and incorporates the allegations made in numerical paragraphs 1 through 11, above, and in addition, alleges and states:

12. Plaintiff has made demand upon State Farm for payment of additional UM/UIM policy benefits and has met all conditions precedent for the payment of those policy benefits.

13. Plaintiff was paid $60,000 by State Farm on or about June 2, 2003, in connection with Plaintiff's UM/UIM claim. Thus, an additional $40,000 remained available under his UM/UIM coverage. State Farm did not require Plaintiff to sign a release at that time. Although State Farm seems to take the position now that it breached its contract with Plaintiff on or about June 2, 2003,

Plaintiff has never suggested that State Farm breached its contract in June 2003. In fact, the two parties reached an agreement regarding the value of Plaintiff's UM/UIM claim as of that point in time.

14. State Farm breached its insurance contract with Plaintiff, as it acknowledges, on or about August 15, 2012, when it refused to unconditionally pay approximately $5,800 to Plaintiff in connection with his ongoing UM/UIM claim, and when it required that Plaintiff sign a release to preclude any further recovery under his UM/UIM coverage. Specifically, State Farm stated in its letter of August 28, 2012, in bold/italics: *"**We are advising you that the statute of limitations date of your Underinsured Motorist Claim due to our recent breach is August 15, 2017.**"* (Emphasis added.)

15. Plaintiff has suffered damages from State Farm's admitted breach of contract.

WHEREFORE, the Plaintiff, William C. Phelps, prays for judgment against the Defendant, State Farm, on its First Cause of Action, up to his remaining Forty Thousand Dollars ($40,000.00) UM/UIM limits, plus costs, prejudgment interest, and all other relief to which he may be entitled.

## SECOND CAUSE OF ACTION

The Plaintiff, for his Second Cause of Action, adopts and incorporates the allegations contained in numerical paragraphs 1 through 15, above, and in addition, alleges and states:

16. State Farm owes Plaintiff, its insured, a duty to deal fairly and in good faith with him.

17. State Farm admits it breached its insurance contract with Plaintiff. State Farm has also *tortiously* breached its contract with its insured – this Plaintiff – by failing to deal fairly and act in good faith, in multiple ways. For example, State Farm purposely misrepresented to Plaintiff the applicable contract statute of limitations in an effort to limit Plaintiff's present UM/UIM claim. Said differently, the five year statute of limitations on Plaintiff's UM/UIM claim began to run, for the first

time, on or about August 15, 2012. It did not begin to run on June 2, 2008, because there was no breach at that time. If State Farm's misrepresentation in this regard was not intentional, it was made as a result of incompetence, inadequate training and/or a lack of knowledge of Oklahoma law. In addition, the release sent to Plaintiff by State Farm is overly broad and seeks to release State Farm for potential claims in addition to the UM/UIM claim at issue, such as "**bad faith, punitive or other damages recognized in law or equity.**" In short, concerned that Plaintiff might exercise his legal right to bring a valid bad faith lawsuit against State Farm in connection with its misrepresentations, its improper effort to limit the amount of Plaintiff's potential recovery under his UM/UIM coverage, and its admitted breach of contract, State Farm required Plaintiff to sign a release that extended beyond the subject matter that gave rise to State Farm's untenable coverage positions. It is anticipated that discovery in this case will reveal that State Farm either uses these overly-broad and illegal releases as a business practice, or that State Farm targeted this Plaintiff for purposes of its illegal release. It is also noteworthy that while State Farm advised Plaintiff that his breach of contract claim will expire on August 15, 2017, State Farm did not inform Plaintiff when the statute of limitations on his bad faith claim would begin to run or expire; State Farm simply chose to attempt to extinguish it altogether with its Release.

18. As a direct and proximate result of State Farm's breach of its duty of good faith and fair dealing owed to Plaintiff, Plaintiff sustained damages, including deprivation of policy benefits, financial loss, mental anguish, embarrassment, anger, anxiety, worry and stress. In addition, State Farm's unwillingness to pay for the medical scooter unless Plaintiff agreed to an overly-broad and illegal release has caused ongoing physical pain and discomfort to Plaintiff.

19. Since August 28, 2012, when Ms. Wienstroer sent her letter to Plaintiff setting forth State Farm's position regarding his ongoing UM/UIM claim, none of her supervisors have retracted

any of the statements made in that letter, demonstrating State Farm's malicious intent (and/or their incompetence). The conduct of State Farm was so reckless, reprehensible, malicious, and outrageous as to warrant the imposition of punitive damages against Defendant, to punish Defendant and to deter like conduct by others.

WHEREFORE, the Plaintiff, William C. Phelps, for his Second Cause of Action, prays for judgment against the Defendant, State Farm, for an amount in excess of $75,000, plus his attorney's fees, costs and prejudgment interest.

Respectfully submitted,

*[signature]*

Gerard F. Pignato, OBA No. 11473
PIGNATO, COOPER, KOLKER & ROBERSON, P.C.
Robinson Renaissance Building
119 North Robinson Avenue, 11th Floor
Oklahoma City, Oklahoma 73102
Telephone:  405-606-3333
Facsimile:  405-606-3334
Email:  jerry@pclaw.org

AND

Monty L. Cain, OBA No. 15891
CAIN LAW OFFICE
10415 Greenbrier Place, Suite A
Post Office Box 892098
Oklahoma City, Oklahoma 73189
Telephone:  405-759-7400
Facsimile:  405-759-7424
Email:  monty@cainlaw-okc.com
ATTORNEYS FOR PLAINTIFF

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED