IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| WILLIAM C. PHELPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-2014-208-D |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign company, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## **O R D E R**

This is a breach of contract and insurance bad faith action arising out of Plaintiff William C. Phelps's ("Phelps") claim for underinsured motorist benefits under his automobile insurance policy with Defendant State Farm Mutual Automobile Insurance Company ("State Farm"). Before the Court are Phelps's Motion for Partial Summary Judgment [Doc. No. 50] and State Farm's Motion for Summary Judgment on Statute of Limitations and Alternative Motion for Partial Summary Judgment on the Legitimate Dispute Doctrine [Doc. No. 29], both filed pursuant to Fed.R.Civ.P. 56.

### **Undisputed Facts**[1]

On December 7, 2001, a vehicle operated by Phelps was struck from behind by a vehicle driven by a non-party ("Tortfeasor"). The investigating officer estimated the speed of Tortfeasor's vehicle to be 15 miles per hour and the damage to Phelps's property to be about $2,000. The accident was reported to State Farm on or about December 11, 2001. By letter

---

[1]This statement includes material facts presented by the parties that are supported as required by Fed.R.Civ.P. 56(c)(1) or otherwise shown by the record. If a party has asserted a fact, or asserted that a fact is disputed, but has failed to provide necessary support, the assertion is disregarded.

dated December 12, 2001, State Farm advised Phelps of potential coverage under his uninsured/underinsured (UM/UIM) motorist coverage. Tortfeasor's vehicle carried applicable liability limits of $50,000.00 with Farmers Insurance ("Farmers"). It was the professional opinion of Phelps's treating physician that Phelps had developed a blood clot in one of his legs as an indirect result of the motor vehicle accident and that future medical expenses for this injury would range between $4,000 and $6,000 over the next ten to fifteen years.

At first, State Farm did not believe Phelps's injuries and damages stemming from the automobile accident would exceed Tortfeasor's $50,000.00 liability limit. On March 5, 2003, State Farm's Team Manager, Jason Taylor ("Taylor"), reviewed the earlier claim evaluation of State Farm claim representative Kelly Wienstroer ("Wienstroer") and noted "[t]his is a tough one to predict what a jury would do. My range is $20-55K. Since this is over the tort limit, we should step in & handle from dollar one." After reviewing Taylor's comments, Wienstroer called Phelps on March 7, 2003, to explain that State Farm had decided to handle the claim from the first dollar. During that conversation, Wienstroer offered Phelps $20,000 to resolve the claim but Phelps indicated he did not believe that amount would be enough to cover his pain and suffering. Later, State Farm made a written offer of $55,000 to Phelps on March 21, 2003.

Wienstroer and Phelps continued discussing the value of Phelps's claim on and off over the course of the next six months. The notes Wienstroer made in the claim file indicate that on June 2, 2003, Phelps told her he thought his claim was worth $75,000 more than State Farm's offer. By letter dated June 2, 2003, Wienstroer informed Phelps the parties' negotiations concerning the value of his claim were at an impasse, explaining:

> Our efforts to resolve this claim through negotiation were not successful and
> appear to have reached an impasse. Under these circumstances, we are advancing

> the amount of our initial offer as explained during our recent discussion. This payment is made in advance without prejudicing your right to receive a higher amount in the future through continuing negotiation or alternative means of resolution.
>
> Enclosed is our draft for $20,000, which represents the amount of our initial offer. The remaining coverage available will be reduced by the amount of this payment, and this payment will also be credited against any final determination of damages. This offer, or your acceptance thereof, does not waive any defenses we may have now or in the future under the policy.
>
> This claim remains open subject to a final determination of the value of your claim. If you wish to discuss your claim further, please contact me.

*See* Wienstroer letter, June 2, 2003 [Doc. No. 30-9]. Phelps continued to disagree with State Farm's valuation of his claim and the parties continued to negotiate.

On September 11, 2003, Wienstroer advised Taylor she thought Phelps might accept $60,000 in settlement. Taylor authorized her to extend the offer. In response, Phelps countered first with $65,000, then $62,000 but eventually agreed to State Farm's terms. By letter dated September 12, 2003, State Farm tendered to Phelps a draft in the amount of $40,000, for a total of $60,000, in settlement of "the total amount of your bodily injury claim." In the letter State Farm, via Wienstroer, advised Phelps as follows:

> This letter confirms our agreement to settle your bodily injury claim for $60,000.00. Our draft is enclosed. As we discussed, this amount represents the total value of your bodily injury claim, and includes money which we believe is owed to you by the at fault party and/or their insurance company. We will seek recovery of the portion of our payment that is owed to you from the at fault party and/or their insurance company.
>
> State Farm is always willing to consider additional information about your claim. If you have additional information that could affect our evaluation, or if there is some material change in the facts, please let us know immediately.

*See* Wienstroer letter, Sept. 12, 2003 [Doc. No. 30-12]. State Farm did not ask Phelps to execute a release of liability as a condition of settlement. After pursuing subrogation from Farmers,

State Farm closed Phelps's UM/UIM claim January 28, 2005.

Following the parties' September 12, 2003 settlement, State Farm did not hear from Phelps again for more than eight years. In the Claim Notes from their conversation on November 2, 2011, Wienstroer reported Phelps "needs a wheelchair and wishes to make a claim." In response, Wienstroer wrote Phelps the following:

> This letter is regarding your inquiry for additional claims resulting from your injury claim which occurred on December 7, 2001.
>
> Unfortunately, the statute of limitations for your Underinsured Motorist Claim has expired. The statute began on June 3, 2003 when we first reached an impasse in the negotiation of your claim and issued payment of our initial offer. Your statute was five years from this date, or June 3, 2008. Unfortunately, we cannot consider additional claims brought after this date.

*See* Wienstroer letter, Nov. 2, 2011 [Doc. No. 42-15]. Phelps called State Farm on November 4, 2011 and stated his recollection was that his UM/UIM claim would remain open indefinitely to pay any further medical claims that might accrue.

Taylor's internal reports from this time period show State Farm's representatives were unclear concerning at what point the statute of limitations begins to run on UM/UIM claims under Oklahoma law, particularly in situations where the parties reached a mutually-agreeable settlement. Although recognizing State Farm did not include information about the statute of limitations in its September 12, 2003 settlement letter to Phelps, Taylor reasoned the parties' initial negotiation impasse on June 3, 2003 likely triggered the five-year limitations period.

In his November 17, 2011 response to one of Taylor's internal reports on the matter, Section Manager Tim Wooldridge ("Wooldridge") wrote:

> After discussing your concerns with Wendy Rogers/P&C Claim we agree if there is no file documentation to the insured specifically stating when the SOL runs then we will consider any additional bills he may have incurred that the treating

4

> doctor believes could be related to the accident. If additional payments are made let's make sure the insured understands the time to make any further claims has expired. . . . As we discussed Wendy will follow up with me on how other Zones are dealing with SOL issues and get back with me so we can further clarify our position on this issue in Oklahoma.

*See* Level II Report to P&C Claims [Doc. No. 42-10 at 6]. On June 1, 2012, State Farm offered Phelps $5,800 to cover the cost of a motorized scooter in exchange for a full and final release of his claims. On August 15, 2012, Phelps informed State Farm he would not sign the release.

Shortly thereafter, Wienstroer again informed Phelps the statute of limitations on his UIM claim had expired and further stated:

> We have again reached a point of disagreement on August 15, 2012, at which time you stated you would not sign a release. ***Therefore we are advising you that the statute of limitations date of your Underinsured Motorist claim due to our recent breach is August 15, 2017. After this date, the Statute of Limitations will prohibit both recovery and/or suit against the Underinsured Motorist Coverage***.
>
> * * * *
>
> We are ready and willing to pay the additional $5,800 in exchange for an executed release for all payments made to you from your Underinsured Motorist Coverage. That total will be $65,800.00. We feel we have already properly considered the element of future treatment, and in fact, six years would remain for the amount of future treatment we considered in 2003. Therefore we do not think any additional consideration would be owed for future medical care.

*See* Wienstroer letter, Aug. 28, 2012 [Doc. No. 50-1] (emphasis in original). Taylor and Wooldridge reviewed and approved Wienstroer's letter before it went out. Wooldridge's home-office consultant, Wendy Rogers, also agreed with State Farm's position on the statute of limitations. It was either Taylor's or Wienstroer's decision to put the language in bold italics "to draw attention to the statement." During her deposition Wienstroer testified State Farm's position "could have been said a little clearly [sic], but our recent breach is our disagreement, our point where you stated you would not sign a release and we explained we could not issue

5

payment unless you agree to sign the release." *See* Wienstroer deposition [Doc. No. 50-2 at 198].

> The release states in pertinent part:
>
> This Settlement Agreement and Release In Full Of All Claims, referred to hereinafter as the "Settlement Agreement", is made this __ day of _____, 2012, to effect a full and final settlement of all claims for loss of consortium, Uninsured/Underinsured motorist ("UM/UIM") coverage, contract benefits and/or breach of contract, bad faith, punitive or other damages recognized in law or equity which William Phelps (herein referred to as "Releasor") may have been entitled to assert against State Farm Mutual Automobile Insurance Company and its subsidiaries and other related companies (herein referred to collectively as "Releases") arising out of or related to claims or issues which were or could have been asserted by Releasor as a result of the accident of December 7, 2001, at, near or on South Douglas, in Midwest City, OK.

*See* Release [Doc No. 50-8]. Although neither Phelps nor his wife ever indicated an intent to pursue claims for bad faith, loss of consortium, or punitive damages against State Farm, the terms of the release extended to such claims.

Phelps filed the instant legal action against State Farm on February 11, 2014. For his first cause of action, Phelps claims State Farm breached the parties' insurance contract on August 15, 2012, when it required him to sign a release precluding any further recovery under his UM/UIM coverage as a condition precedent to receiving $5,800 for a motorized scooter. For his second cause of action, Phelps asserts State Farm breached its duty of good faith and fair dealing and seeks punitive damages therefor. State Farm moves for summary judgment on limitations grounds, arguing the statute of limitations on Phelps's claims expired in 2008, five years after the parties first disagreed about the value of his claims. In the alternative, State Farm moves for partial summary judgment on Phelps's bad faith claims, arguing a legitimate dispute exists as to when the statute of limitations begins to run on UM/UIM claims under Oklahoma

law. Phelps, for his part, moves for partial summary judgment regarding his claim State Farm breached the parties' insurance contract in 2012 when, as a condition of his receiving a motorized scooter, State Farm sought to require him to sign an overly-broad release in alleged violation of Oklahoma law.

**Summary Judgment Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* If a party who would bear the burden of proof at trial lacks evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"Movants for summary judgment bear the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Silverstein v. Federal Bureau of Prisons*, 559 Fed.Appx. 739, 752 (10th Cir. 2014); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). If the movant carries this initial burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler*, 144 at 671. To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. *See*

Fed.R.Civ.P. 56(c)(1)(A); *see also Adler*, 144 F.3d at 671. "The court need consider only the cited materials, but it may consider other materials in the record." *See* Fed.R.Civ.P. 56(c)(3); *see also Adler*, 144 F.3d at 672. The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

"In a diversity case such as this, the laws of the forum state, here Oklahoma, govern our analysis of the underlying claims." *Reid v. Geico Gen. Ins. Co.*, 499 F.3d 1163, 1167 (10th Cir. 2007).

## Discussion

### A.  Statute of Limitations

State Farm moves for summary judgment on limitations grounds. In *Uptegraft v. Home Ins. Co.*, 662 P.2d 681 (Okla. 1983), the Supreme Court of Oklahoma held "actions to recover a loss under the uninsured motorist coverage are governed by the five-year statute of limitations applicable to written contracts" rather than the two-year limitations period applicable to torts.[2] *Id.* at 683. In *Wille v. Geico Cas. Co.*, 2 P.3d 888 (Okla. 2000), the court adopted "the

---

[2]  Title 12, section 95(A) of Oklahoma Statutes provides:

Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

1. Within five (5) years: An action upon any contract, agreement, or promise in writing; . . .

3. Within two (2) years: An action for trespass upon real property; an action for taking, detaining, or injuring personal property, including actions for the specific recovery of personal property; an action for injury to the rights of another, not

(continued...)

8

rationale of the majority of states" in deciding "an action for the recovery of uninsured/underinsured motorist benefits accrues and the statute of limitations begins to run when the insurance contract is breached" rather than when the underlying motor vehicle accident occurred. *Id.* at 888. "In *Uptegraft*, we held that the insurer's refusal to pay it's [sic] insured on a valid claim constituted a breach of contract." *Id.*, 2 P.3d at 892.

Apart from identifying the insurer's refusal to pay its insured as the breach event in *Uptegraft*, the *Wille* court did not otherwise delimit or define the circumstances that constitute breach of contract in the UM/UIM context. The numerous cases the Oklahoma Supreme Court cited in support of the majority, breach-of-contract approach hold the triggering event to be either the insurer's refusal to arbitrate or its outright denial of the insured's claim for benefits. *Id.* at 891, n.4. In reaching its decision, the *Wille* court relied on Jeffrey A. Kelso & Matthew R. Drevlow, "*When Does the Clock Start Ticking? A Primer on Statutory and Contractual Time Limitation Issues Involved in Uninsured and Underinsured Motorist's Claims*," 47 DRAKE L. REV. 689 (1999), *Wille*, 2 P.3d at 892, n. 10, which notes "[a] majority of courts, basing their decisions on contract theory, have held that the cause of action against the UM/UIM carrier accrues *when the carrier denies its insured's claim for benefits*. It is at this point that the UM/UIM carrier may be said to have breached the contract." Kelso & Drevlow, *supra*, at 693 (emphasis added).

---

[2](...continued)
arising on contract, and not hereinafter enumerated.

OKLA. STAT. tit 12 § 95(A).

9

State Farm asserts the requisite breach occurred June 2, 2003, the day Phelps refused to accept its initial $20,000 offer, and that the statute of limitations thus expired June 2, 2008, more than three years before Phelps made his request for a motorized scooter.[3] Phelps's testimony that at no point in 2003 did he consider his insurer to have breached the parties' insurance contract is irrelevant, according to State Farm, because establishing when a litigant can first maintain an action to a successful conclusion within the meaning of *Wille* does not concern the insured's subjective belief but an objective determination of "when 'the party asserting it first acquires the right to sue,' that is, when the party acquires notice of the facts which would support such a claim." *Fleming v. Quail Creek Nursing & Rehab. Ctr.*, 2013 WL 4459494, *2 (N.D. Okla. Aug. 19, 2013), quoting *Kinzy v. State ex rel. Okla. Firefighters Pension & Retirement Sys.*, 20 P.3d 818, 823 (Okla. 2001). Because the time period begins to run when there is a "controversy under the contract upon which a party may sue," *Wille*, 2 P.3d at 892, State Farm maintains the question before this Court is whether Phelps was aware in 2003 of a controversy under the UM/UIM contract regarding the value of his claim.

To establish breach of an insurance contract, "Plaintiffs need only show that a contract existed, that they are entitled to payment (in this case, that a covered loss occurred), and that Defendant refused payment, thereby breaching its promise to pay sums due under the policy." *Cameron v. Travelers Homes & Marine Ins. Co.*, 2012 WL 5266172, *2 (W.D. Okla. 2012) (*citing Uptegraft*, 662 P.2d at 684). State Farm argues *Wille* stands for the proposition that the limitations trigger is the date the insurance company denies the insured's claim for benefits ***in***

---

[3]State Farm maintains the latest date on which the statute of limitations could be said to have been triggered is September 12, 2003, when the parties agreed to settle the claim for $60,000.

10

*whole or in part* and cites *Newport v. USAA*, 11 P.3d 190, 198 (Okla. 2000) for the proposition that a breach of contract action may accrue not only for complete denials of insurance coverage but for low settlement offers as well, even after partial payment has been made. But the insurer in *Newport* "promised to make the uninsured motorist coverage available, made a small advance towards that end, and then refused to make further payment on the claim outside a settlement far below the dollar value placed on the claim based on its own investigation." *Newport*, 11 P.3d at 198. Here, the $20,000 State Farm advanced to Phelps on June 2, 2003, rather than being "far below the dollar value" it placed on Phelps's claim, was within its own appraisal range. Moreover, once made, State Farm did not refuse to make further payments to Phelps, but settled the claim as it stood then for an additional $40,000 which it immediately forwarded to its insured. As such, the circumstances that served as evidence of breach in *Newport* are not present in the case at bar.

Thus, the question remains whether an insurer that advances to its insured the amount of its initial offer because the parties' appraisals remain far apart but continues to negotiate with its insured to a mutually-agreeable settlement, can be said to have breached the insurance contract within the meaning of *Wille* so as to trigger the running of the statute of limitations. State Farm insists it can, and quotes *Wille* as follows:

> A statute of limitations begins to run when a cause of action accrues. This happens when a litigant can first maintain an action to a successful conclusion. It does not commence until a plaintiff has a legal right to sue.
> \* \* \* \*
> The majority of the jurisdictions which have considered this question have decided that the recovery of the insured is premised upon the insurance contract without which no liability could be imposed upon the insurer. These courts recognize that until a breach of the insurance contract occurs, there is no controversy under the contract upon which a party may sue. We have crossed that bridge. In *Uptegraft*, we held that the insurer's refusal to pay it's [sic] insured on

a valid claim constituted a breach of contract.

*Willie*, 2 P.3d at 891-92 (footnotes omitted). State Farm argues all of the elements necessary for a breach of contract action were present by June 2, 2003, when Phelps refused to accept its initial offer and tens of thousands of dollars separated the parties' claim appraisals. State Farm further argues its rejection of Plaintiff's several requests for more than $60,000.00 to settle his UIM claim constitutes exactly the type of "controversy under the contract" that provides the insured with "a legal right to sue" and thus triggers the statute of limitations.

While State Farm's use of an ellipsis in the middle of the above *Wille* quotation would appear to suggest the omission of one or more entire paragraphs from the language of the Oklahoma Supreme Court's opinion,[4] in actuality, State Farm deleted only two sentences, to wit:

> A statute of limitations begins to run when a cause of action accrues. This happens when a litigant can first maintain an action to a successful conclusion. It does not commence until a plaintiff has a legal right to sue. **The determinative issue is whether the cause of action is based on a tort or a contract. A few jurisdictions rely on the underlying tort claim to use the date of the accident as the starting point.** The majority of the jurisdictions which have considered this question have decided that the recovery of the insured is premised upon the insurance contract without which no liability could be imposed upon the insurer. These courts recognize that until a breach of the insurance contract occurs, there is no controversy under the contract upon which a party may sue. We have crossed that bridge. In *Uptegraft*, we held that the insurer's refusal to pay it's [sic] insured on a valid claim constituted a breach of contract.

*Id*. at 891-92 (footnotes omitted; emphasis added). The omitted material shows that the *Wille* court used the "when a cause of action accrues," and "has a legal right to sue" language in formulating its inquiry as one concerning a determination of which date was the appropriate

---

[4]"Indicate the omission of one or more entire paragraphs by inserting and indenting four periods (". . . .") on a new line." THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION R. 5.4, at 47 (Columbia Law Review Ass'n et al. eds., 17th ed. 2000).

statute of limitations trigger in the UM/UIM context: the date on which the contract was breached or the date of the motor-vehicle accident. It seems that the *Wille* court did not intend those phrases to comprise the rubric according to which courts should assess whether a breach of contract has in fact occurred.

In any event, the undisputed facts are that on June 2, 2003, State Farm forwarded Phelps a $20,000 draft along with a letter informing him that while the parties "appear to have reached an impasse," the claim "remains open subject to a final determination of the value" and the payment would "be credited against any final determination of value." Following this, State Farm and Phelps continued negotiating in good faith for three months until reaching a $60,000 settlement on September 12, 2003. Although State Farm declared in the letter accompanying its remaining $40,000 payment, "this amount represents the total value of your bodily injury claim," it also requested that Phelps "please let us know immediately" of any "additional information that could affect our evaluations, or if there is some material change in the facts," words which could appear to anticipate future activity on the claim. Furthermore, at no point did State Farm deny coverage or refuse payment on Phelps's claim, as was the case in *Uptegraft* and all of the breach of contract cases cited by *Wille* that did not involve the insurer's refusal to arbitrate. To the contrary, State Farm issued Phelps a payment for $20,000 on June 2, 2003, the very day it now insists the breach occurred and the statute began to run. Moreover, Phelps has testified that in light of this course of conduct, he did not consider State Farm to be in breach of the parties' contract in 2003.

For these reasons, the Court determines that questions of material fact exist regarding whether the parties' dealings in 2003 resulted in a breach of contract that triggered the applicable

13

statute of limitations. *See , e.g., Wolf v. Preferred Risk Life Ins. Co.,* 728 F.2d 1304 (10th Cir.1984) (trial court should not grant summary judgment for a defendant if there is a "viable issue of fact" as to when the limitations period began) (*quoting State of Ohio v. Peterson,* 585 F.2d 454, 457 (10th Cir. 1978)). Because there are disputed issues of fact which preclude ruling in State Farm's favor on statute of limitations grounds, the Court need not address Phelps's remaining arguments against summary judgment on this issue, namely, that State Farm's failure to issue a litigation hold in 2003 supports Phelps's contention that no breach of contract occurred at that time, and that State Farm either has waived the statute-of-limitations defense or is equitably estopped from asserting it.

**B.     Breach of Contract in 2012**

Phelps moves for partial summary judgment with respect to his claim State Farm breached the parties' insurance contract in 2012 when, as a condition of his receiving a motorized scooter, it sought to require Phelps to sign an overly-broad release allegedly in violation of Oklahoma law that would have precluded him from pursuing additional claims against State Farm. Phelps asserts State Farm's Auto Claim Manual adopts and incorporates Oklahoma's Unfair Claim Settlement Practices Act, which provides "[r]equesting a claimant to sign a release that extends beyond the subject matter that gave rise to the claim payment" constitutes an unfair claim settlement practice. *See* OKLA. STAT. tit. 36 § 1250.5(8). Phelps later asserts in his Reply [Doc. No. 53], however, that he is not pursuing a claim against State Farm for violation of that Act. In any event, Phelps fails to quote relevant provisions of the parties' contract for motor vehicle insurance or attach a copy of the document as an exhibit to his brief.

Phelps cites *Christian v. American Home Assur. Co.*, 577 P.2d 899 (Okla. 1977), for the

proposition that an implied duty of good faith and fair dealing is encompassed in every insurance contract, and that as a result neither party to a contract may do anything "which will injure the right of the other to receive the benefits of the agreement." Plaintiff's motion [Doc. No. 50], p.8. Although not a model of clarity, it appears that Plaintiff's motion is predicated on State Farm's insistence that he sign the previously-mentioned release; consequently, Phelps's breach of contract claim rests solely on State Farm's August 28, 2012 letter to Phelps, in which Wienstroer wrote:

> After gathering the additional information regarding the claim for the scooter, we have agreed to pay you the amount you requested for the scooter in the amount of $5,800.00. As the claim is more than 10 years past the loss date and four years past what we believe to be the likely statute date of the Underinsured claim, we will require you to sign a release for the sum of our payments, which will include the additional $5,800.00 we are offering. If you are unwilling to sign a release, we cannot make any further payment.
>
> We have again reached a point of disagreement on August 15, 2012, at which time you stated you would not sign a release. ***Therefore we are advising you that the statute of limitations date of your Underinsured Motorist claim due to our recent breach is August 15, 2017. After this date, the Statute of Limitations will prohibit both recovery and/or suit against the Underinsured Motorist Coverage***.

*See* Wienstroer letter, Aug. 28, 2013 [Doc. No. 50-1] (emphasis in original).

To demonstrate breach of contract, Phelps must prove "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." *Digital Design Group, Inc. v. Info. Builders, Inc.* 24 P.3d 834, 843 (Okla. 2001). Phelps does not include the contract as evidentiary support for his claim. It is thus unclear whether a provision exists that prohibits State Farm from requesting Phelps execute a release for a full and final settlement of his UM/UIM claim in exchange for additional payment, and Phelps points to no specific contract language breached by State Farm. Nor does Phelps identify any damages suffered as a result of

15

State Farm requesting a release aside from his general assertions he might have been precluded from bringing a claim for bad faith or loss of consortium at some point in the future had he signed the release

Moreover, Taylor testified that by the term "breach" as used in the letter, State Farm did not mean it had breached the insurance contract with Phelps, but that a "disagreement on the value of our claim" sufficient to "start the statute of limitations on the claim" had occurred:

> Well, I use the term "breached" and "disagreement" or "non-agreement" interchangeably throughout the file. We specifically use that term "breach" in this case because that's the term that's used in *Wille*, and we were very intentional about using that term. We don't think we breached the contract, we think that's when Mr. Phelps might have thought a breach had occurred, he made a demand, we couldn't accept his demand, therefore, he had a trigger for a statute of limitations beginning to run.

*See* Taylor deposition [Doc. No. 42-4 at 29]. Wienstroer likewise testified that as used in the letter "breach means a disagreement over the value of the claim." *See* Wienstroer deposition [Doc. No. 42-3 at 164]. The many vagaries related to Phelps's assertion State Farm breached its contract with him as a matter of law in 2012 by requiring him to sign a release in order to receive a motorized scooter preclude the grant of summary judgment in his favor on his breach of contract claim.

### C. Legitimate Dispute Defense

State Farm moves for partial summary judgment on Phelps's bad faith claim. Under Oklahoma law,

> [T]he elements of a bad faith claim against an insurer for delay in payment of first-party coverage are: (1) claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury. The absence of any one of these elements defeats a bad faith

16

claim.

*Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (Okla. 2009) (footnotes omitted). In a bad faith tort action, "[t]he critical question . . . is whether the insurer had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding or delaying payment under the policy." *Id.* at 725 (brackets and quotation marks omitted); *see also Garnett v. Gov't Emps. Ins. Co.*, 186 P.3d 935, 944 (Okla. 2008) ("A central issue is whether the insurer had a good faith belief in some justifiable reason for the actions it took or omitted to take that are alleged to be violative of the duty of good faith and fair dealing."). But,

> [b]efore the issue of an insurer's alleged bad faith may be submitted to the jury, the trial court must first determine as a matter of law, under the facts most favorably construed against the insurer, whether the insurer's conduct may be reasonably perceived as tortious. It is not a breach of the duty of good faith for an insurer to resort to a judicial forum to settle legitimate disputes as to the validity or amount of an insurance claim.

*Garnett*, 186 P.3d at 944 (footnotes omitted).

Under Oklahoma law, when an insurer denies a claim based on the existence of a legitimate dispute, there can be no inference of bad faith. *See Banister v. State Farm Mut. Auto Ins. Co.*, 692 F.3d 1117, 1127 (10th Cir. 2012) (quoting *Oulds v. Principal Mut. life Ins. Co.*, 6 F.3d 1431, 1442 (10th Cir. 1993)). "However, 'a legitimate dispute as to coverage will not act as an impenetrable shield against a valid claim of bad faith.'" *Id.* (quoting *Timberlake Constr. Co. v. U.S.F.&G.*, 71 F.3d 335, 343 (10th Cir. 1995)). In other words, even where there is a legitimate business dispute, a jury may decide the issue of bad faith if there is evidence that the insurer did not actually rely on that legitimate basis to deny coverage or that the insurer acted improperly in other ways. *Id.* at 1128; *see also Ball*, 221 P.3d at 730 (holding "where there has been no controlling legal authority in Oklahoma" on the enforceability of a particular exclusion

in a UM contract, "tort liability for withholding or delaying payment of UM benefits in reliance on the Exclusion will not lie.").

State Farm contends a legitimate business dispute exists because Oklahoma law is not clear on the precise events that trigger the five-year statute of limitations in the UM/UIM context. In light of the confusion over the issue shown by State Farm's own internal documents, as well as the Court's discussion, *supra,* regarding the lack of clarity under Oklahoma law on the subject of whether and when a breach of contract can be said to have occurred under these facts, the Court agrees. State Farm is entitled to judgment as a matter of law that it did not act in bad faith in assuming the statute of limitations on Phelps's UM/UIM claim had expired June 2, 2008 and in requiring Phelps to sign a release of liability in order to receive a motorized scooter in 2012.

## Conclusion

For these reasons, the Court finds State Farm is not entitled to summary judgment on the issue of the statute of limitations but is entitled to partial summary judgment on Phelps's bad faith claim. The Court further finds Phelps is not entitled to partial summary judgment on his 2012 breach of contract claim.

IT IS THEREFORE ORDERED that Defendant State Farm's Motion for Summary Judgment on Statute of Limitations [Doc. No. 29] is DENIED and its Alternative Motion for Partial Summary Judgment on the Legitimate Dispute Doctrine [Doc. No. 29] is GRANTED, and Plaintiff William C. Phelps's Motion for Partial Summary Judgment [Doc. No. 50] is DENIED.

IT IS SO ORDERED this 4th day of August, 2015.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE